UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
J & J SPORTS PRODUCTIONS, INC.,
As Broadcast Licensee of the January 21, 2006
MORALES/PACQUAIO Program,

                        Plaintiff,                REPORT AND
                                              RECOMMENDATION
      -against-                                 06 CV 3703 (FB)(RML)

HILARIO D. URENA, individually and as
officer, director, shareholder and/or principal of
SAJOMA RESTAURANT CORP. d/b/a
SAJOMA REST., and SAJOMA RESTAURANT
CORP. d/b/a SAJOMA RESTAURANT a/k/a
SAJOMA REST.,

                        Defendants.
------------------------------------------------------------X

LEVY, United States Magistrate Judge:

        By order dated January 3, 2007, the Honorable Frederic Block, United States District Judge, granted plaintiff's motion for entry of a default judgment and referred this matter to me for a report and recommendation with regard to the scope of relief, including damages, costs, and attorney's fees, owed to the plaintiff. For the reasons stated below, I respectfully recommend that plaintiff be awarded $4,000 in damages and $1,302.50 in attorney's fees and costs.

## BACKGROUND AND FACTS

        Plaintiff J&J Sports Productions, Inc. ("plaintiff" or "J&J Sports") brought this action in July 2007 alleging violation of the Communications Act of 1934, as amended, 47 U.S.C. §§ 553 and 605 (1996). Plaintiff alleges that defendants procured or received pay-per-view cable television services without authorization or consent. (Complaint, filed July 27, 2006 ("Compl."), ¶¶ 18-19.) After defendants failed to appear or answer in this action, plaintiff moved for the entry of a default judgment. On January 3, 2007, Judge Block granted plaintiff's

motion and referred the matter of damages to me.  By order dated January 4, 2007, plaintiff was given the opportunity to supplement its inquest submission on or before January 26, 2007 and defendants were ordered to file any opposition on or before February 23, 2007.  To date, the court has received no communication from defendants.

Once a default judgment is entered, a defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability.  Cotton v. Slone, 4 F.3d 176, 181 (2d Cir. 1993); Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); Time Warner Cable of New York City v. Googies Luncheonette, Inc., 77 F. Supp. 2d 485, 487 (S.D.N.Y. 1999); Time Warner Cable of New York City v. Olmo, 977 F. Supp. 585, 587 (E.D.N.Y. 1997).  Plaintiff's allegations are as follows:

Plaintiff is a California corporation that owns the commercial distribution rights to the January 21, 2006 Morales/Pacquaio prize-fight ("the Event").  (Compl. ¶¶ 5, 15.)  The Event was transmitted via closed circuit television and by encrypted satellite signal.  (Id. ¶ 15.)  For a fee, a customer could receive an unscrambled signal and display the Event to its patrons.  (Id. ¶¶ 15-17; see also Plaintiff's Memorandum of Law, dated Oct. 11, 2006 ("Pl.'s Mem."), at 2-3.)  Plaintiff does not list the minimum licensing fee for commercial establishments in its complaint, its legal memorandum, or its affidavit.

Defendant Sajoma Restaurant Corp. is a business located at 1296 Nostrand Avenue, Brooklyn, New York.  (Compl. ¶ 10.)  Defendant Hilario D. Urena resides at 1705 Caton Avenue, Brooklyn, New York.  He is an officer, director, shareholder and/or principal of Sajoma Restaurant Corp. and had the capacity to supervise or control the activities there on the night of January 21, 2006.  (See Compl. ¶¶ 6-8.)

Plaintiff sent an independent auditor, Thomas Larkin, to the establishment during the broadcast of the Event.  (Affidavit of Thomas Larkin, sworn to Feb. 7, 2006 ("Larkin Aff.").)  At 10:50 p.m., Larkin entered Sajoma Restaurant and observed one television showing the Event

with approximately ten patrons in the establishment. (Id.)[1] The capacity of the establishment is an estimated fifty persons. (Id.) Defendants had not contracted with plaintiff to receive or display the Event, and they were not otherwise authorized to display it. (Affidavit of Joseph Gagliardi, sworn to Sept. 20, 2006 ("Gagliardi Aff."), ¶¶ 6, 8.) Plaintiff asserts that the only way the Event could have been shown in the establishment was if an owner or an agent intentionally committed a wrongful act to receive the satellite signal. (Id. ¶ 10.)

Plaintiff seeks statutory damages of $10,000 under 47 U.S.C. § 605(e)(3)(C)(i)(II), and "up to" $100,000 under § 605(e)(3)(C)(ii). (Pl.'s Mem. at 8.) Plaintiff also seeks attorney's fees and costs of $1,302.50 under § 605(e)(3)(B)(iii). (See Affidavit of Julie Cohen Lonstein, Esq., sworn to Oct. 11, 2006 ("Lonstein Aff."), ¶ 3).)

## DISCUSSION

1. Statutory Damages

Plaintiff seeks damages under 47 U.S.C. § 605(a), which states, in relevant part:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

Satellite cable programming clearly falls under this law. See 47 U.S.C. § 605(d)(3).

Section 605 further states that where a plaintiff is unable to provide evidence of the extent of any violations, the plaintiff may elect to recover statutory damages, rather than actual damages. See 47 U.S.C. § 605(e)(3)(C)(i)(II). Plaintiff has elected to recover statutory damages under 47 U.S.C. § 605(e)(3)(C)(i)(II), which allows for statutory damages for "each

---

[1] Larkin made three headcounts between 10:50 and 10:52 p.m., finding ten patrons present each time. (Larkin Aff.)

violation of subsection (a) of this section . . . in a sum of not less than $1,000 or more than $10,000, as the court considers just . . . ." (See Pl.'s Mem. at 5.)

The amount of damages assessed pursuant to § 605 rests within the sound discretion of the court. 47 U.S.C. § 605(e)(3)(C)(i)(II); see also Home Box Office v. Champs of New Haven, Inc., 837 F. Supp. 480, 484 (D. Conn. 1993). Most courts faced with the unauthorized commercial receipt and broadcast of a cable program have assessed damages based on the number of patrons in the establishment at the time of transmission. See, e.g., Garden City Boxing Club, Inc. v. Rosado, No. CV 05-1037, 2005 U.S. Dist. LEXIS 27108, at *9 (E.D.N.Y. Oct. 6, 2005) (recommending statutory damage award of $989.10, representing $54.95 for each of the 18 patrons that the investigator observed in the establishment during the prize fight); Garden City Boxing Club v. Morales, No. 05-CV-0064, 2005 U.S. Dist. LEXIS 22989, at *16 (E.D.N.Y. Aug. 18, 2005) (recommending statutory damage award of $3,297, representing $54.95 for each of the 60 patrons who witnessed the event); Joe Hand Promotions, Inc. v. Hernandez, No. 03 Civ. 6132, 2004 U.S. Dist. LEXIS 12159, at *11 (S.D.N.Y. June 30, 2004) (awarding $50 per patron against establishments for unauthorized display of pay-per-view boxing match); Googies Luncheonette, 77 F. Supp. 2d at 490 (same); New Contenders, Inc. v. Diaz Seafood Corp., No. 96 Civ. 4701, 1997 U.S. Dist. LEXIS 13132, at *8 (S.D.N.Y. Sept. 2, 1997) (awarding $300 per patron under § 605); Kingvision Pay-Per-View Corp. v. Prime Time Saloon, Inc., slip op., No. 95 CV 1422 (E.D.N.Y. Sept. 30, 1996) (awarding $50 per patron, plus $10 per patron to reflect a $10 cover charge). As one court has explained, the per-patron valuation "is based on a theory of rough justice" that the patrons viewing the event without access to the unauthorized showing "would have ordered it themselves [at a cost of approximately $50 each]." Googies Luncheonette, 77 F. Supp. 2d at 490. See also Garden City Boxing Club, Inc. v. Bello, No. CV-05-1300, 2005 U.S. Dist. LEXIS 23115, at *8 (E.D.N.Y. Sept. 20, 2005) (explaining that the per-patron calculation is based on the assumption that each

patron would have paid to view the prize fight from home had he or she not had access to a free broadcast at a neighborhood establishment).[2] "Plaintiff is thus fully compensated for any loss it suffered," and by divesting the defendant of any profits, "it assures that [defendant] reap[s] no benefit from unlawful action." Googies Luncheonette, 77 F. Supp. 2d at 490.

I find the per-patron valuation appropriate here. According to the report of the investigator, there were approximately ten patrons present during the broadcast of the Event. (Larkin Aff.) An affidavit from Joseph Gagliardi, President of J&J Sports, states that a private residence would have been able to purchase the event at the residential price of $54.95. (Gagliardi Aff. ¶ 10(B).) Ten multiplied by $54.95 leads to an award of $549.50, which falls below the statutory minimum. I therefore recommend that plaintiff be awarded $1,000 in statutory damages, the minimum allowed under 47 U.S.C. § 605(e)(3)(C)(i)(II).

2. Enhanced Damages

Plaintiff also seeks an increased award pursuant to 47 U.S.C. § 605(e)(3)(C)(ii), which provides, in relevant part:

> In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, . . . by an amount of

---

[2] In Bello, the Magistrate Judge recommended a statutory damage award of $2,198, representing $54.95 for each of the 40 patrons who could have viewed the prize fight based on the establishment's capacity. In using the capacity, rather than the number of patrons the investigator observed, the court explained that it was "entirely possible that at some point in the evening the restaurant did indeed hold that maximum number, if not more, as it is debatable whether an establishment that deigns to display illegally pilfered boxing matches to attract additional customers would turn away those very same customers when the facility reached its maximum capacity." Bello, 2005 U.S. Dist. LEXIS 23115, at *3. I find this analysis speculative and prefer to hold the plaintiff responsible for supporting its request with evidence concerning the actual number of patrons who viewed the Event. See Garden City Boxing Club, Inc. v. Perez, No. 05 CV 3713, 2006 WL 2265039, at *6 (E.D.N.Y. Aug. 8, 2006) (rejecting the approach in Bello because "although it is entirely possible that more patrons were there before or after the auditor's visit, it is also entirely possible that there were not.").

> not more than $100,000 for each violation of subsection (a) of this
> section.

Willfulness is defined as "disregard for the governing statute and an indifference for its requirements," Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 127 (1985), and is established by the fact that an event is broadcast without authorization. See Googies Luncheonette, 77 F. Supp. 2d at 490 ("[s]ignals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems"). Courts use a variety of factors in determining whether a defendant's willful conduct justifies enhanced damages. These factors include (1) repeated violations over an extended period of time; (2) substantial unlawful monetary gains; (3) advertising the broadcast; and (4) charging an admission fee or charging premiums for food and drinks. Kingvision Pay-Per-View Ltd. v. El Rey Del Bistec y Caridad, Inc., No. 01-CV-6562, 2001 U.S. Dist. LEXIS 20531, at *6-7 (S.D.N.Y. Dec. 12, 2001).

In this case, defendants never contracted for the right to broadcast the Event and, accordingly, were not authorized to intercept, receive or transmit communication of the Event. (See Compl. ¶¶ 18-19.) In order to have received the Event, someone connected with the establishment had to have engaged in some deliberate act. (See id.) Since the transmission of the Event was electronically coded and the establishment was not authorized to receive the transmission, an owner or operator must have used an illegal decoding device or some other unlawful means. (Id. ¶ 19.) Therefore, the conduct was willful. In addition, the court may draw an inference of willfulness from a defendant's failure to appear and defend an action in which the plaintiff demands increased statutory damages based on allegations of willful conduct. See Fallaci v. The New Gazette Literary Corp., 568 F. Supp. 1172, 1173 (S.D.N.Y. 1983).

On the other hand, none of the four willfulness factors described above is present in this case. See Kingvision v. El Rey Del Bistec y Caridad, Inc., 2001 U.S. Dist. LEXIS 20531, at *8. Plaintiff does not offer evidence that either Urena or Sajoma Restaurant Corp. has

> not more than $100,000 for each violation of subsection (a) of this
> section.

Willfulness is defined as "disregard for the governing statute and an indifference for its requirements," Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 127 (1985), and is established by the fact that an event is broadcast without authorization. See Googies Luncheonette, 77 F. Supp. 2d at 490 ("[s]ignals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems"). Courts use a variety of factors in determining whether a defendant's willful conduct justifies enhanced damages. These factors include (1) repeated violations over an extended period of time; (2) substantial unlawful monetary gains; (3) advertising the broadcast; and (4) charging an admission fee or charging premiums for food and drinks. Kingvision Pay-Per-View Ltd. v. El Rey Del Bistec y Caridad, Inc., No. 01-CV-6562, 2001 U.S. Dist. LEXIS 20531, at *6-7 (S.D.N.Y. Dec. 12, 2001).

In this case, defendants never contracted for the right to broadcast the Event and, accordingly, were not authorized to intercept, receive or transmit communication of the Event. (See Compl. ¶¶ 18-19.) In order to have received the Event, someone connected with the establishment had to have engaged in some deliberate act. (See id.) Since the transmission of the Event was electronically coded and the establishment was not authorized to receive the transmission, an owner or operator must have used an illegal decoding device or some other unlawful means. (Id. ¶ 19.) Therefore, the conduct was willful. In addition, the court may draw an inference of willfulness from a defendant's failure to appear and defend an action in which the plaintiff demands increased statutory damages based on allegations of willful conduct. See Fallaci v. The New Gazette Literary Corp., 568 F. Supp. 1172, 1173 (S.D.N.Y. 1983).

On the other hand, none of the four willfulness factors described above is present in this case. See Kingvision v. El Rey Del Bistec y Caridad, Inc., 2001 U.S. Dist. LEXIS 20531, at *8. Plaintiff does not offer evidence that either Urena or Sajoma Restaurant Corp. has

engaged in any other pay-per-view theft violations. Moreover, plaintiff's investigator was not charged a cover fee to enter defendant's establishment and the Event was shown on only one television set. (Larkin Aff.) Further, plaintiff does not allege that the defendants advertised the display of the Event in order to entice customers into the establishment. (Id.) Rather than attempting to establish any of the four willfulness factors, plaintiff argues that enhanced damages are appropriate because, once the means are in place to unlawfully intercept pay-per-view programming, pay-per-view theft is likely to happen repeatedly. (Pl.'s Mem at 6.)

In light of the circumstances surrounding the display, I respectfully recommend that an additional award of $3,000 in enhanced damages, *i.e.*, a factor of three times the per-patron amount, be assessed against defendants for willful violation of the Communications Act. See Kingvision Pay-Per-View Ltd. v. Olivares, No. 02 Civ. 6588, 2004 U.S. Dist. LEXIS 6261, at *11 (S.D.N.Y. Apr. 5, 2004) ("Generally, it is reasonable to increase an actual or statutory damages award by a specific percentage to penalize a defendant for willful acts"); Googies Luncheonette, 77 F. Supp. 2d at 491 (imposing additional damage award of $3,000, three times the base award, against defendant with no record of any other theft of cable services or other intellectual property, to "serve as a reasonable deterrent against future violations"); see also Time Warner Cable v. Taco Rapido Rest., 988 F. Supp. 107, 112 (E.D.N.Y. 1997) (imposing enhanced damages award of $5,000 where defendant displayed boxing match to approximately seventy-five patrons on one television set); Broadcast Music, Inc. v. R Bar of Manhattan, Inc., 919 F. Supp. 656, 660 (S.D.N.Y. 1996) (increase of five times the base award for willful acts).

The complaint names both Urena and Sajoma Restaurant Corp. as defendants. I recommend that plaintiff's award be limited to a single recovery of $4,000 ($1,000 compensatory plus $3,000 enhanced). In other words, defendants should be held jointly and severally liable for a single award of $4,000 in statutory damages. See Entertainment by J&J, Inc. v. Mama Zee Rest. & Catering Servs., Inc., No. CV-01-3945, 2002 U.S. Dist. LEXIS 13686,

at *13 (E.D.N.Y. May 21, 2002).

    3. <u>Attorney's Fees and Costs</u>

  As the prevailing party, plaintiff is also entitled to an award of reasonable attorney's fees and costs in this action. 47 U.S.C. § 605(e)(3)(B)(iii). <u>International Cablevision, Inc. v. Sykes</u>, 997 F.2d 998, 1009 (2d Cir. 1993); <u>Time Warner Cable of New York City v. U.S. Cable T.V., Inc.</u>, 920 F. Supp. 321, 329 (E.D.N.Y. 1996). In the Second Circuit, applications for attorney's fees must be supported by contemporaneous time records specifying "relevant dates, time spent and work done." <u>Broadcast Music</u>, 919 F. Supp. at 661 (citing <u>Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers</u>, 34 F.3d 1148, 1160 (2d Cir. 1994); <u>Lewis v. Coughlin</u>, 801 F.2d 570, 577 (2d Cir. 1986); <u>New York State Ass'n for Retarded Children, Inc. v. Carey</u>, 711 F.2d 1136, 1148 (2d Cir. 1983)). The court, which has "considerable discretion," then considers the billing records and calculates a "presumptively reasonable fee"[3] – that is, a reasonable hourly rate multiplied by a reasonable number of hours. <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany</u>, 493 F.3d 110, 2007 WL 2004106, at *7 (2d Cir. July 12, 2007). The Second Circuit set the standard for determining what constitutes a "reasonable number of hours" in <u>Gierlinger v. Gleason</u>, which stated that the court must "'examine the hours expended by counsel and the value of the work product of the particular expenditures to the client's case.'" 160 F.3d 858, 876 (2d Cir. 1998) (quoting <u>DiFilippo v. Morizio</u>, 759 F.2d 231, 235-36 (2d Cir. 1985)). <u>Gierlinger</u> goes on to state that "[i]f the court determines that certain claimed hours are 'excessive, redundant, or otherwise unnecessary,' the court should exclude those hours in its calculation." 160 F.3d at 876 (quoting <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 434 (1983)). Hourly rates, in turn, are "reasonable" when they conform to those rates "prevailing in the community

---

  [3] The Second Circuit has recently recommended abandoning the formerly-used "lodestar" term. <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany</u>, 493 F.3d 110, 2007 WL 2004106, at *7 (2d Cir. July 12, 2007).

for similar services by lawyers of reasonably comparable skill, experience, and reputation." Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984). See also Arbor Hill, 2007 WL 2004106, at *7-9 (clarifying the "forum rule" for setting reasonable hourly rates). As the court determines what "rate a paying client would be willing to pay," it must bear in mind "that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." Arbor Hill III, 2007 WL 2004106, at *7.

In the present case, plaintiff's attorney, Julie Cohen Lonstein, has submitted an affidavit stating that she and her firm, Lonstein Law Office, P.C., expended a total of 5.2 hours (3.7 attorney hours and 1.5 paralegal hours) on this matter. (See Lonstein Aff. ¶ 4.) She has not submitted documentation to authenticate the number of hours spent, but her affidavit summarizes the work done and the hours expended. (Id.) Courts recognize that "[a]ttorney affidavits which set forth all charges with the required specificity but which are reconstructions of the contemporaneous records satisfy [this requirement] and suffice to permit recovery of attorneys' fees," as do "typewritten transcriptions of the original handwritten time sheets filled out by the attorneys." David v. Sullivan, 777 F. Supp. 212, 223 (E.D.N.Y. 1991); see also Cruz, 34 F.3d at 1160 (typed summaries of hours drawn from contemporaneous time records, without submission of actual time records, was sufficient to support attorney's fees application).

Plaintiff's submissions are unremarkable, boilerplate forms containing careless errors.[4] Nonetheless, the amount of time counsel spent is not unreasonable. The hourly rates plaintiff requests – $200 per hour for Ms. Lonstein and $75 per hour for a paralegal – seem reasonable and in line with the rates charged for comparable work in this area. See, e.g., Rosado, 2005 U.S. Dist. LEXIS 27108, at *16 (awarding same hourly rates to this counsel). I

---

[4] For instance, plaintiff's Memorandum of Law seeks a judgment against Alba M. Rodriguez and Mexican & Dominican Rest. Corp., who are not defendants in this case. (See Pl.'s Mem. at 10.)

therefore respectfully recommend that plaintiff be awarded attorney's fees of $852.50.

Plaintiff also seeks reimbursement for costs in the amount of $450, which includes $250 for filing fees and $200 for service of process. (See Lonstein Aff. ¶ 3.) The costs for filing fees and service of process are reasonable and I recommend that plaintiff be awarded $450 in costs.

**CONCLUSION**

For the reasons stated above, I respectfully recommend that plaintiff be awarded $4,000 in damages and $1,302.50 in attorney's fees and costs. Any objection to this Report and Recommendation must be filed with the Clerk of the Court, with courtesy copies to Judge Block and to my chambers, within ten (10) business days. Failure to file objections within the specified time period waives the right to appeal the district court's order. See 28 U.S.C. § 636(b)(1); see also Fed. R. Civ. P. 72, 6(a), 6(e).

Respectfully submitted,

/s/
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
September 7, 2007